J-A14022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE ALLEN VENEY JR. | : | |
| | : | |
| Appellant | : | No. 2293 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 26, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000868-2021

BEFORE: PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 15, 2023**

Appellant, Bruce Allen Veney Jr., appeals from the July 26, 2022 Judgment of Sentence entered in the Delaware County Court of Common Pleas following his conviction of Persons Not to Possess a Firearm.[1] Appellant challenges the denial of a pre-trial motion to suppress statements and physical evidence obtained during a search of his vehicle. After careful review, we affirm.

On December 11, 2020, at approximately 1:30 AM, Trooper Worth and Trooper Epley stopped Appellant because of a "dead tag" violation.[2] Trooper Worth approached Appellant's driver-side window and obtained Appellant's

_____

[1] 18 Pa.C.S. § 6105(a)(1).

[2] A "dead tag" is a tag that is not permitted to be on the vehicle under the Motor Vehicle Code. 75 Pa.C.S. § 1301(a).

license, insurance, and registration. Trooper Epley approached the passenger side of the vehicle. Appellant informed the troopers at the time of the traffic stop that he was aware that his plate was listed with PennDOT as a dead tag. Appellant explained that he had taken the tag from his other vehicle prior to its repossession and put it on his current vehicle. Trooper Worth indicated that he would not issue a ticket if all of Appellant's information checked out and that Appellant should contact PennDOT about the dead tag problem. During that initial conversation, Appellant informed the troopers that he was travelling from Southwest Philadelphia to his home in Chester after finishing a carpentry job. Appellant also volunteered that he was on parole for a murder conviction.

The troopers returned to their vehicle to run Appellant's information through the database. The troopers found that the Vehicle Identification Number ("VIN") on Appellant's vehicle came back to a different plate that was not on the vehicle. The troopers also found that Appellant had prior convictions for other crimes that he had not disclosed. Trooper Epley informed Trooper Worth that he had seen a bottle of Hennessy in the backseat of Appellant's vehicle.

The troopers returned to Appellant's vehicle and asked him to exit the vehicle in order to perform a sobriety test. Appellant told the troopers that he had been drinking earlier that night. Trooper Eppley frisked Appellant, and Trooper Worth conducted a visual spot search of the driver's seat. The troopers did not observe any signs of impairment during the sobriety test.

Throughout the stop, the troopers asked several times to search Appellant's vehicle for weapons and contraband, and Appellant repeatedly refused. After the sobriety test was completed, Trooper Worth continued to question Appellant for several minutes and repeatedly asked to search the vehicle for weapons and contraband. Appellant eventually admitted that there was some marijuana in the vehicle and indicated that the troopers could take it. While recovering the contraband near the center console, troopers found a firearm inside the vehicle's center console.

The Commonwealth charged Appellant with 7 counts relating to his possession of marijuana, alcohol, and the firearm.

On April 5, 2021, Appellant filed an omnibus pretrial motion, which included a motion to suppress statements and physical evidence obtained during the detention. On July 1, 2021, the trial court held a hearing where Trooper Worth testified to the above facts. Trooper Worth also testified that Appellant did not maintain sufficient eye contact when the trooper asked about contraband in the vehicle. On the same day, the trial court denied Appellant's motion to suppress.

On June 21, 2022, the trial court held a bench trial. The Commonwealth proceeded only on the charge of Persons not to Possess a Firearm. On June 24, 2022, the trial court found Appellant guilty. On July 26, 2022, the trial court sentenced Appellant to 72 to 144 months of incarceration.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant challenges the trial court's finding that the officers had reasonable suspicion of criminal activity to prolong the traffic stop beyond its original missions of investigating the "dead tag" and the possible DUI.[3] Appellant's Br. at 3.

Our review of a challenge to the denial of a motion to suppress "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Stem*, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003). "[H]owever, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the

---

[3] Appellant also challenges the trial court's determination that Appellant waived his right to appeal the issues related to the motion to suppress for failure to comply with Pa.R.C.P. 581(D). While the Omnibus Pretrial Motion filed by Appellant was vague, the evidentiary record was developed during the suppression hearing and through the briefs submitted by both parties to the lower court. Both Appellant and the Commonwealth agree that the issues are not waived. Therefore, we address Appellant's issues on the merits.

right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

We categorize police interactions with members of the public into three general tiers of increasing intrusiveness, which require increasing levels of suspicion that a defendant is engaging in criminal activity: (1) mere encounters, which require no suspicion; (2) investigative detentions, which require reasonable suspicion; and (3) custodial detentions, which require probable cause. *Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008).

A police officer may initiate a traffic stop if he has reason to believe that a violation of the traffic code has occurred. *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013). The level of suspicion required to support the stop turns on the kind of violation in question: if it is the kind of violation that would require further investigation, the stop must be supported by reasonable suspicion; if it is the kind of violation that is immediately apparent and would not require any further investigation, the stop is supported by probable cause. *Id.* In either case, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop, and attend to related safety

concerns." ***Commonwealth v. Malloy***, 257 A.3d 142, 149 (Pa. Super. 2021) (citation and quotation marks omitted).

Demonstrating reasonable suspicion requires that the detaining officer "articulate something more than an inchoate and unparticularized suspicion or hunch" that the defendant has engaged in criminal activity. ***Commonwealth v. Jefferson***, 256 A.3d 1242, 1248 (Pa. Super. 2021) (*en banc*) (citation omitted). In determining whether the Commonwealth has met this burden, courts must make an objective inquiry into whether, based on "the facts available to [the] police at the moment of intrusion[,]" a person "of reasonable caution" would believe that the defendant has engaged in criminal activity. ***Id.*** (citation omitted).

Appellant does not dispute that the officers were justified in stopping Appellant for the dead tag violation. Appellant's Br. at 18. Appellant argues that once he had passed the sobriety test, the troopers did not have the right to continue questioning Appellant about matters unrelated to the mission of the traffic stop while retaining his license and registration. ***Id.*** Appellant claims that at that point in time, all mission-related and incidental inquiries had been satisfied, and the troopers lacked the authority to further detain Appellant. ***Id.*** at 25. Therefore, Appellant claims that the illegal detention tainted his consent to the search and the trial court should have suppressed the evidence obtained during the subsequent search. ***Id.***

The trial court found that Appellant had given valid consent for the search and denied Appellant's motion to suppress. Tr. Ct. Op., 11/3/22, at 20.

The court considered the following factors in support of the troopers' reasonable suspicion of criminal activity after the end of the traffic stop: 1) Appellant had a criminal background, 2) Appellant maintained insufficient eye contact when asked if there was contraband in the vehicle, 3) Appellant was not honest in disclosing his complete criminal background, 4) Appellant was stopped for an expired tag at 1:30 AM traveling from Southwest Philadelphia to Chester, 5) Appellant had an open container of alcohol in his vehicle in violation of his parole, and 6) Appellant's VIN matched a different license plate which was not showing on the vehicle. *Id.* The trial court found that based on these factors, the troopers had reasonable suspicion to "extend the detention of the Defendant and make further inquiry with respect to suspected criminal activity." *Id.* at 21.

We conclude that the record supports the suppression court's findings of fact and the court properly denied Appellant's motion to suppress. The totality of the evidence presented at the suppression hearing, including that Appellant had been drinking in violation of his parole and had an open container of alcohol in his vehicle, was sufficient to justify the troopers' reasonable suspicion that Appellant was engaging in criminal activity. Therefore, the questioning that elicited Appellant's consent to search the vehicle was properly conducted to investigate these suspicions. Appellant's claim, thus, fails.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/15/2023